UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SURGE STAFFING LLC, | ) |
| | ) No. 22 CV 5041 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ERICA TOLBERT and RESOLVE | ) |
| HR, LLC d/b/a RESOLVE HUMAN | ) |
| RESOURCES, | ) |
| | ) January 7, 2025 |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Plaintiff Surge Staffing LLC ("Surge") brings this action accusing Defendants Erica Tolbert ("Tolbert") and Resolve HR, LLC ("Resolve") of misappropriating Surge's trade secrets to poach its customers and employees. Before the court is Resolve's motion to strike Surge's amended interrogatory answers and to exclude evidence. For the following reasons, the motion is granted:

**Background**

Surge filed this lawsuit in September 2022, (R. 1, Compl.), and the court entered a protective order in November 2022, (R. 18), paving the way for discovery of confidential information. Resolve issued interrogatories ("INTs") and requests for production of documents ("RFPs") to Surge the following month. (See R. 16, Jt. Status Rep. at 6.) Of relevance here, Resolve's INT No. 6 asked Surge to "[i]dentify with specificity the Confidential Information you believe Erica Tolbert divulged to Resolve." (See R. 107, Def.'s Mot. Ex. 1 at 5.) Similarly, Resolve's INT No. 9 asked

Surge to "[i]dentify with specificity the Trade Secrets you believe Erica Tolbert divulged to Resolve." (Id. Ex. 1 at 7.) Surge answered Resolve's INTs and RFPs on January 20, 2023, and stated in response to Resolve's INT Nos. 6 and 9, that "pursuant to FRCP 33(d), see Tolbert's 2020 Employment Contract and the information detailed in sections 8, 11-12, and the emails (and attachments) forwarded by Tolbert from her Surge email address to her personal email address. Investigation continues." (Id. at 2, Ex. 1 at 5, 7.)

Resolve's INT Nos. 7 and 10 in turn asked Surge to identify with specificity Surge's damages "for each such item of Confidential Information divulged to Resolve," and "for each such item of Trade Secrets divulged to Resolve," respectively. (Id.) Surge answered INT Nos. 7 and 10 by referring generally to damages suffered through the loss of "Customer A" and "Customer B," with whom Surge did business from 2017 to October 2021 and from 2017 to January 2022, respectively, and two other customers with whom Surge did business until about November 2021. (Id. Ex. 1 at 5-8.)

Resolve says it based its entire "case strategy" on Surge's answers to these INTs, including by asking Surge's Rule 30(b)(6) designee Gabriel Velazquez questions about "each and every piece of Confidential Information and Trade Secret identified" in Surge's answers during the August 9, 2024 Rule 30(b)(6) deposition. (Id. at 2-3 (arguing that "[a]bout half of the deposition was structured specifically around" these answers).) Surge designated Velazquez to cover topics related to "the definition, nature, development, and protection of Surge's confidential and/or 'trade secret'

2

information." (Id. at 3.) Resolve also asserts that it "collected and analyzed each of the 'emails (and attachments) forwarded by Tolbert from her Surge email address to her personal email address'" and then asked Velazquez about these emails "to assess if and how they constitute Confidential Information or Trade Secrets." (Id. at 3.) At the end of such questioning, Resolve asked whether there was "any other confidential information that Surge claims [Tolbert] disclosed to Resolve," and Velazquez responded, "No, not to my knowledge, sir."[1] (Id. Ex. 2 at 3.)

Eighteen days later, on August 27, 2024, Surge disclosed in a joint status report that within three weeks it would "supplement its prior discovery to include, for example, updated financial information on . . . customers" for which it allegedly suffered losses. (R. 103, Jt. Status Rep. at 3.) Surge did not do so. Instead, Surge waited more than seven weeks, until October 18, 2024, to amend its answers to Resolve's INTs ("Amended Answers"), and did not limit its Amended Answers to a supplementation of customer financial information. (Id.; R. 107, Def.'s Mot. at Ex. 3 at 6-7.) Surge's Amended Answers to INT Nos. 6 and 9 identify the following "Confidential Information" and "Trade Secrets" that Surge alleges Tolbert shared with Resolve:

- Tolbert's 2016 Employment Contract and the information detailed in sections 8, 10, 14;
- Surge's Employee Handbook . . . ;

---

[1] Surge noted during the deposition that the identities of its clients had not yet been identified. (R. 107, Def.'s Mot. Ex. 2 at 3.) In response, Resolve reframed the question to Velazquez as follows: "Other than the identities of those six clients, is there any other confidential information that Surge claims that [Tolbert] disclosed to Resolve?" (Id.) The witness responded, "No, not to my knowledge, sir." (Id.)

- [T]he emails (and attachments) forwarded or copied by Tolbert from her Surge email address to her personal email address or [] otherwise retained by her;
- [T]he information on Surge customers, potential customers and business practices that Tolbert took and retained in her cell phone . . . ;
- [C]ustomer or potential customer communications, training materials, and financial reports, which are compiled and often maintained in Surge's software database, called "TempWorks" or "Beyond" . . . includ[ing]:

  - [I]nformation on customers, internal employees and temporary staff, and payroll . . . ;
  - Information imported from customer emails, calls and meetings or visits;
  - Details of Surge's margins, which includes the hourly wage "multiplier code" . . . ;
  - Details on Surge's labor costs;
  - Workers compensation codes;
  - Job Title/Job descriptions detailing what the customer or potential customer is looking for in terms of positions and labor-force;
  - Customer preferences based on customer or potential customer communications;
  - Relevant customer documents, including Service Agreements;
  - Conversion rates (also known as "Direct Hire" fee amounts);
  - Payment terms for customers;
  - Credit limits;
  - Invoice/billing information for customers;
  - Key contact information for customers or potential customers;
  - Custom data; and
  - Details on temporary staff including contact details, CVs, payroll, etc.

(R. 107, Def.'s Mot. Ex. 3 at 6-7.) The Amended Answers further identify "a proprietary Performance Selection System ('PSS') used to gain and retain business," which Surge represents "is exclusively utilized by [it]." (Id. Ex. 3 at 7.) And according to Resolve, Surge attached as Exhibit A to its Amended Answers "an 18-page spreadsheet which references a whopping . . . 808[] bates-stamped documents nearly all of which were produced over a year ago if not longer." (Id. Ex. 3 at 13-30 (emphasis

4

removed).)  At the end of its Amended Answers to INT Nos. 6 and 9, Surge indicated that its "[i]nvestigation continues." (Id. Ex. 3 at 7.)

Surge's Amended Answers to INT Nos. 7 and 10 identify two additional "Surge customers" and indicate that Surge's "[i]nvestigation continues." (Id. Ex. 3 at 7-9.) Resolve says Surge has known about these two other customers for more than a year. (Id. at 5.) Surge offers only a vague response about when it learned of the new information included in the Amended Answers. (See R. 110, Def.'s Resp. at 4 (stating that Surge's Amended Answers are "based, at least in part, on information learned during the on-going discovery, including the depositions of Tolbert (on July 22, 2024) and Kesic/Resolve (on July 31, 2024)").)

By October 18, 2024, when Surge served the Amended Answers, most of fact discovery was already complete. On July 11, 2024, this court made clear that "the parties may not serve supplemental written discovery without leave of court, except for supplementing earlier discovery responses as required under Rule 26(e) and serving requests to admit and subpoenas for records." (R. 102.) The court reaffirmed two months later, on September 5, 2024, that "[w]ritten discovery is closed, except for supplementing earlier discovery responses as required under Rule 26(e) and serving requests to admit and subpoenas for records." (R. 105.) And on October 12, 2024, the court set December 13, 2024, as the deadline for fact discovery. (R. 106.)

5

## Analysis

Surge brings its trade secret claims against Tolbert and Resolve pursuant to the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1.[2] (R. 1, Compl. ¶¶ 111-25, 133-51.) In ITSA and other trade secret misappropriation cases, timely disclosure of and specificity in identifying trade secrets is critical. Indeed, early identification of trade secrets "serve[s] as a limiting principle for the scope of discovery." *Deere & Co. v. XAPT Corp.*, No. 19 CV 4210, 2024 WL 443486, at *5 (C.D. Ill. Jan. 19, 2024). And "no one can determine what discovery is relevant to any claim or defense in this case [under Federal Rule of Civil Procedure 26(b)] without knowing what [the plaintiff's] trade secrets are." *Id.*

Resolve argues that Surge violated Rule 26(e) by serving Amended Answers to INT Nos. 6, 7, 9, and 10 because they are not only "untimely [and] prejudicial" but also "grossly expand the type and nature of 'Confidential Information' and 'Trade Secrets'" supposedly misappropriated. (R. 107, Def.'s Mot. at 6.) Under Rule 26(e), discovery responses must be supplemented or corrected "in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Timeliness hinges on

---

[2] ITSA requires a plaintiff to establish that: "(1) the information at issue was a trade secret; (2) . . . it was misappropriated; and (3) it was actually used in the defendant's business." *In re Adegoke*, 632 B.R. 154, 165 & n.8 (Bankr. N.D. Ill. 2021). A trade secret is defined under ITSA as "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers." 765 ILCS 1065/2(d).

"when the party first learns of the information." *Medline Indus., Inc. v. C.R. Bard, Inc.*, No. 17 CV 7216, 2021 WL 809734, at *4 (N.D. Ill. March 3, 2021). "[T]he producing party bears the burden of showing that the production at issue was timely," and if the party fails to do so, as a sanction Rule 37(c)(1) precludes the party from "using that information . . . to supply evidence on a motion, at a hearing, or at trial." *Montoya, IDOC v. Mitchell DDS*, No. 17 CV 1796, 2024 WL 1328799, at *2 (N.D. Ill. March 28, 2024) (citing Fed. R. Civ. P. 37(c)(1)).

A court has "broad discretion" when deciding whether a party has complied with Rule 26, *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003), and considers the following factors when assessing whether a discovery violation is justified or harmless under Rule 37: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; [and] (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date," *Montoya,* 2024 WL 1328799, at *2. A court also has "inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). Under the latter authority, sanctions are justified only "if the offender willfully abuses the judicial process or litigates in bad faith." *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). Where sanctions are appropriate, the court must ensure they are proportional to the circumstances. *Id.*; *see also Ebmeyer v. Brock*, 11 F.4th 537, 547 (7th Cir. 2021).

7

The court finds Surge's Amended Answers to Resolve's INTs to be untimely. Surge suggests in its response that it had until the close of discovery on December 13, 2024, to amend its written discovery responses. (R. 110, Pl.'s Resp at 4.) But the court plainly ordered otherwise. On July 11, 2024, and then again on September 5, 2024, the court ordered that written discovery was closed. (R. 102 (ordering on July 11, 2024, that "[t]he focus of the remaining fact discovery should be oral discovery, not written discovery"); R. 105 (ordering on September 5, 2024, that "[w]ritten discovery is closed").) Although the court indicated in those orders that earlier discovery responses could be supplemented pursuant to Rule 26(e), as the producing party, Surge fails to show that it timely served the Amended Answers on Resolve. *See* Fed. R. Civ. P. 26(e); *Medline Indus., Inc.*, 2021 WL 809734, at *3. Besides, the fact discovery deadline the court sets alone cannot dictate whether an amendment required under Rule 26(e) is timely.

To be sure, Surge does not explain when it learned the information set forth in its Amended Answers, other than to state that those Answers are "based, at least in part, on information learned during the on-going discovery, including the depositions of Tolbert (on July 22, 2024) and Kesic/Resolve (on July 31, 2024)." (R. 110, Pl.'s Resp. at 4.) Surge further notes that it "highlighted its intent to supplement its prior discovery responses in the August 27, 2024 Joint Status Report." (Id.) Neither assertion helps Surge. As to the former, Surge makes no effort to identify what information it learned through the discovery that required it to correct its discovery responses and when it learned such information. And importantly, Surge does not

8

explain why it waited nearly three months after the identified depositions to serve its Amended Answers. Given the significance of early identification of trade secrets during discovery, *see Deere*, 2024 WL 443486, at *5, Surge's nearly three-month delay—at the tail end of fact discovery—in supplementing its trade-secret related INT answers is inexcusable. As to the latter assertion, putting a placeholder in a joint status report in August 2024 indicating that Surge would supplement certain financial information within the next three weeks and then not following through until about seven weeks later is likewise inexcusable. (See R. 103, Jt. Status Rep.) Rule 26(e) demands timeliness, but Surge failed to meet this obligation.

  The court further concludes that Surge's violation of Rule 26(e) is neither justified nor harmless under Rule 37. Turning first to "the prejudice or surprise" to Resolve, as "the party against whom the evidence is offered," *Montoya,* 2024 WL 1328799, at *2, there is no doubt that Resolve was surprised by Surge's October 18, 2024 Amended Answers to Resolve's INTs. Resolve sought early disclosure and specific identification of Surge's trade secrets in this case, issuing written discovery requests to Surge at the earliest inception—shortly after the court entered a protective order. (See R. 16, Jt. Status Rep. at 6; R. 18, Protective Order.) Surge answered Resolve's INT Nos. 6 and 9 on January 20, 2023, by identifying specific confidential information and trade secrets it believes Tolbert shared with Resolve. (R. 107, Def.'s Mot. at 2, Ex. 1 at 5, 7.) Based on Surge's disclosure, the parties proceeded with discovery, with Resolve relying on Surge's identification of its alleged confidential information and trade secrets to define the relevant scope of discovery.

9

(Id. at 2-3); *see also Deere*, 2024 WL 443486, at *5. During oral discovery, Resolve also relied upon the August 9, 2024 testimony of Surge's Rule 30(b)(6) designee, Velazquez, that he was not aware of "any other confidential information that Surge claims [Tolbert] disclosed to Resolve," other than that which had already been identified. (R. 107, Def.'s Mot. Ex. 1 at 5.)

Then, at the eleventh hour, with written discovery complete and less than two months left before the close of fact discovery, Surge served Amended Answers that significantly expand the scope of its claims against Resolve. As relevant here, Surge amended its answers to Resolve's INT Nos. 6 and 9 by adding an extensive new list of alleged confidential information and trade secrets and two additional Surge customers. (Id. Ex. 3 at 6-7, 13-30.) The list of confidential information and trade secrets in the Amended Answers includes the following: (1) general categories of information, such as customer information and practices, customer communications, training materials, and financial reports; (2) the allegedly proprietary PSS system; and (3) an exhibit listing more than 800 documents. (Id.) As to its answers to Resolve's INT Nos. 7 and 10, Surge identified two new customers. (Id. Ex. 3 at 7-9.)

Surge fails to explain why it waited more than a year and a half—after answering Resolve's INTs on January 20, 2023—to amend or supplement its answers to Resolve's INT Nos. 6, 7, 9, or 10. Nor did Surge rectify the apparent inconsistency between its Amended Answers and Surge's corporate testimony on August 9, 2024, that it did not have "any other confidential information that Surge claims [Tolbert] disclosed to Resolve." (Id. at 3, Ex. 2 at 3.) Surge also does not explain the extent to

10

which new information listed in the Amended Answers may have fallen within the previous identification. Surge says that Exhibit 3 to the motion, identifying the more than 800 documents identified in Surge's Amended Answers to Resolve's INT Nos. 6 and 9, "consists of documents produced well over a year ago." (R. 110, Pl.'s Resp. at 6.) But that argument only begs the question as to why Surge did not act more promptly to correct its discovery responses and designate them as trade secrets. As such, the first factor, "the prejudice or surprise," weighs in Resolve's favor.

The second factor, "the ability of the party to cure the prejudice," also favors Resolve. Surge claims that when it served its Amended Answers, fact discovery remained open and Resolve still had the opportunity to depose Surge's second Rule 30(b)(6) designee, allowing for mitigation of any harm. (R. 110, Pl.'s Resp. at 6-7.) However, Resolve spent more than a year and a half investigating the confidential information and trade secrets Surge identified in response to INT Nos. 6 and 9 on January 20, 2023, including by deposing Surge's Rule 30(b)(6) designee on August 9, 2024, about "the definition, nature, development, and protection of Surge's confidential and/or 'trade secret' information." (R. 107, Def.'s Mot. at 3.) In its response, Surge suggests it is fair to give Resolve a matter of weeks to try to defend itself against a much broader scope of alleged confidential information and trade secrets. (R. 107, Def.'s Mot. Ex. 1 at 5, 7.) But that simply is not the way discovery works, as Surge itself acknowledges in a recent motion it filed to exclude the testimony of two witnesses it alleges were not timely disclosed. (See R. 116, Pl.'s Mot. to Exclude Testimony at 2 (arguing that the untimely disclosure "violates [Rule

11

26(a)(1)] and undermines the principles of fairness and transparency that are the foundation of the discovery process," thus necessitating the exclusion of testimony "to prevent prejudice to Surge and to uphold the integrity of these proceedings").) It is too late in fact discovery for Surge to ask Resolve to start anew on discovering Surge's contentions in its untimely Amended Answers. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 330 F.R.D. 502, 505 (N.D. Ill. 2019) (denying the plaintiff's tardy attempt to increase the scope of its trade secret case). Unless the court were to extend fact discovery, which it made clear it would not, (R. 106), the prejudice Surge's delay caused in disclosing the Amended Answers cannot be cured. *See M-1 Holdings, Inc. v. Members 1st Fed. Credit Union*, No. 22 CV 1162, 2024 WL 5040838, at *1 (N.D. Ill. Dec. 6, 2024) ("[D]eadlines are essential. Without them, especially in discovery, cases would, of course, go on endlessly." (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006)). Accordingly, the second factor also favors Resolve.

The third factor—likelihood of disruption to the trial— weighs in Surge's favor only because a trial date has not yet been set. That said, if the court were to allow the untimely discovery responses, it would need to extend fact discovery to allow Resolve to investigate Surge's new trade secret claims, necessarily prolonging the life of this case, including any trial. The court is not willing to do that here. *See G & G Closed Cir. Events, LLC v. Castillo*, No. 14 CV 2073, 2016 WL 3551634, at *7 (N.D. Ill. June 30, 2016) (finding "unacceptable" an "eleventh-hour supplement" of disclosures that "paint[ed] the court into a corner in which it ha[d] to strike the disclosures or extend the discovery deadline").) To do so would necessarily eviscerate

12

the significance of court-scheduled deadlines—an outcome Surge itself refuses to accept when it does not suit its position. (See R. 116, Pl.'s Mot. to Exclude Testimony at 2 (complaining that Resolve's untimely disclosure of two witnesses would "disrupt the orderly administration of justice").

Finally, Resolve has not offered any evidence commenting on the "bad faith or willfulness" factor. However, Resolve endeavored to determine the extent to which the 808 documents identified in Exhibit A to Surge's Amended Answers were produced in this case. (R. 107, Def.'s Mot. Ex. 3 (attaching Ex. A).) According to Resolve, Surge produced only six of the documents identified and it did so more than a year ago. (R. 111, Def.'s Reply at 2 (revealing "only that Defendant Tolbert scanned responsive documentation to herself for production in the case," Resolve contends).) By contrast, Surge possessed "316 of the newly discovered documents," and had not previously disclosed them to Resolve. (Id.) The remaining 500-plus documents consist of Tolbert's document production, which Resolve says was last supplemented more than a year ago. (Id.) Given its findings, Resolve questions what prompted "these late document disclosures." (Id.) The court does too because it was Surge that brought this lawsuit. The court finds that Surge's late disclosure and the way it orchestrated this disclosure suggest an attempt to hamper Resolve's efforts to defend against Surge's claims—and at the very least show disregard for this court's discovery orders. (See R. 102; R. 105.)

As discussed, where, as here, the court finds a violation of Rule 26(e), Rule 37(c)(1) prohibits a party from "using that information . . . to supply evidence on

13

a motion, at a hearing, or at trial." Rule 37(c) seeks "to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ahad v. Bd. of Trs. of S. Ill. Univ.*, No. 15 CV 3308, 2018 WL 534158, at *3 (C.D. Ill. Jan. 24, 2018) (internal quotations and citation omitted). In determining what information should be stricken from Surge's Amended Answers, the court is mindful that any sanctions must be "appropriate . . . to penalize and discourage misconduct," *Ramirez*, 845 F.3d at 776, and proportional to the circumstances, *Donelson*, 931 F.3d at 569 (7th Cir. 2019); *Ebmeyer*, 11 F.4th at 547. Given these standards, and based on the facts presented, the court strikes Surge's Amended Answers to INT Nos. 6, 7, 9, and 10 and Surge is barred from using the new information discussed therein as trade secrets.

## Conclusion

For the foregoing reasons, Resolve's motion to strike and exclude is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

14